143 So. 195

SWINDLE, County Treasurer, v. STATE ex rel. PRUITT, Probation Officer.

6 Div. 153.

Court of Appeals of Alabama.

June 14, 1932.

Malcolm E. Nettles, of Jasper, for appellant.

L. D. Gray, of Jasper, for appellee.
Brief did not reach the Reporter.

BRICKEN, P. J.

The validity of certain statutes hereinafter designated is involved in this proceeding. In the court below the cause was tried and determined upon an agreed statement of facts, and the trial court granted the writ of mandamus as prayed. From such order, this appeal was taken. Upon consideration here, the writer reached the conclusion that the court below was in error in granting the writ, and as the statute provides the question was referred to the Supreme Court. Section 7322, Code 1923. In response thereto the Supreme Court agreed with the views

here entertained, and rendered the following answer to the certified question:

"The constitutional question is certified by the Court of Appeals to this Court for decision under section 7322, Code.

"The question is: Did the trial court commit error in granting the writ of mandamus and ordering the writ to issue, commanding respondent, as Treasurer of Walker County, to pay the warrant for $15.00 allowed, drawn and payable to relator and petitioner as Probation Officer and Clerk of the Domestic Relations Court of Walker County?

"The demurrer of respondent, among other things, was on the following ground: 'Because that portion of section 2, which provides that the County shall pay to the Probation Officer, fifty cents for each day said prisoner is confined under sentence for violating section 2 of the Acts of 1919, on February 18, 1919, is violating section 45 of the Constitution of Alabama, in that the duties required by the said section as to allowances are not a part of, embraced in, cognate or germane to, the caption of said act.'

"The demurrer was overruled, and upon the petition, answer, and evidence, the writ of mandamus was ordered as prayed, and the costs in that behalf incurred were taxed against respondent.

"The act (Acts of 1915, p. 560), or so much thereof in section 1 as may fix a charge upon the counties of fifty cents per day, upon the sentence of the derelict, to be paid out of the general fund to a probation officer to be expended, etc., and 'whether the county did or did not collect the same upon the said sentence, is foreign to the title of the said act,' was condemned in Board of Revenue and Road Com'rs of Mobile County v. State ex rel. Roberts, 200 Ala. 456, 457, 76 So. 388. The majority said: 'Fastening this liability upon the counties after the sentence, and regardless of what it may collect for the hire of the convict, is not germane or cognate to the general subject dealt with in the title of the act, and the inclusion of same in the body of said act was prohibitive of section 45 of the Constitution. Whether or not the elimination of this objectionable part of the section will affect the balance of same, or the remainder of the act, or whether or not the rest of the act is subject to the other constitutional objections, we need not decide, as the elimination therefrom of the objectionable part of section 1, as above pointed out, is decisive of the present case.' 200 Ala. 457, 76 So. 388, 389; Fuqua v. City of Mobile, 219 Ala. 1, 2, 121 So. 696.

"The Attorneys General in opinions to county officials on this point (under the Acts of 1915, p. 560; Acts of 1919, page 176) formerly advised the non-liability of the county, unless the sum ordered paid was actually received by the county from the hire of said convict. Report of Attorney General, 1924–26, p. 314; Report of Attorney General, 1924–26, p. 336; 2 Opinion Attorney General, page 229, to Director of Child Welfare Department, of date of June 28th, 1927; Report of Attorney General 1928–1930, page 183.

"The opinion, however, to the County Board of Revenue of Tuscaloosa County, on July 10th, 1931, under section 4480 of the Code and Gen. Acts of 1927, pp. 52 and 54, was to the contrary.

"It has been frequently announced that the courts will presume such an act as constitutional, unless it appears to contrary effect, when the meaning of the act is looked to as a whole and under existing law (Sadler v. Langham, 34 Ala. 311; Quartlebaum v. State, 79 Ala. 1; State ex rel. Wilkinson v. Lane, 181 Ala. 646, 62 So. 31; Smith v. Stiles, Judge of Probate, 195 Ala. 107, 70 So. 905; Board of Revenue v. McDanal, 213 Ala. 349, 105 So. 191) and beyond a reasonable doubt.

"And under the amended statute this court has treated the same as valid and constitutionally enacted; and the several acts on the subject have been construed and applied in pari materia. State ex rel. Sellers v. Murphy, Judge, 207 Ala. 290, 92 So. 661; Caylor v. State, 219 Ala. 12, 121 So. 12; State ex rel. Harmon v. Murphy, 211 Ala. 663, 101 So. 465; Ex parte Blue, 218 Ala. 113, 118 So. 147; Ex parte Newsome, 212 Ala. 168, 102 So. 216; Wynn v. State, 18 Ala. App. 397, 92 So. 520; Higginbotham v. State, 20 Ala. App. 476, 103 So. 71; State v. Blackwell, 16 Ala. App. 500, 79 So. 198.

"Adverting to the statute of 1915, page 560, which was condemned in Board of Revenue, etc., v. State ex rel. Roberts. 200 Ala. 456, 76 So. 388, and amended by the Acts 1919, p. 176, the provision of section 1, requiring the county to pay the sums indicated from general funds of the county not otherwise appropriated (and declared not germane or cognate to the title, Board of Revenue, etc., v. State ex rel. Roberts, supra), was not eliminated from section 1 of the act 1915 as amended by § 2 Acts of 1919. However, the title to the act was amended so as to embrace the same matter. The words added to the title were 'defining the obligation of counties in such cases.' This amendment was sufficient to give notice that such obligations were imposed upon counties and their general funds not otherwise expended, and took the act without the influence of the decision in Board of Revenue, etc., v. State ex rel. Roberts, 200 Ala. 456, 76 So. 388, or the analogy to be found in Roper v. State ex rel. Day, 210 Ala. 440, 98 So. 286.

"We are of the opinion, and so hold, that the act (Acts 1919, page 176) in respects here challenged by demurrer is not to be condemned for duplicity; that the matter embraced in its Section 1 is cognate and ger-

mane and offends no provision of Section 45 of the Constitution. Fuqua v. City of Mobile, 219 Ala. 1, 121 So. 696, and authorities; Lindsay v. United States Savings & Loan Ass'n, 120 Ala. 156, 24 So. 171, 42 L. R. A. 783; Ballentyne v. Wickersham, 75 Ala. 533; Harry T. Hartwell et al. v. State ex rel. Virginia Bullock Willis, (Ala. Sup.) 142 So. 678.[1] It has been carried forward in the last Code as sections 4480, 4481, Code of 1928, and was the subject of consideration in Ex parte Blue, 218 Ala. 113, 118 So. 147, as to support during pending appeal.

"Would it 'be illegal to pay said sum' by reason of other provisions of the Constitution?

"Thus we are brought to a consideration of the last objection urged against that statute, —that it is offensive to section 94 of the Constitution, which forbids the legislature to authorize any county to lend its credit or to grant public money or thing of value in aid of, or to any individual, etc. Southern Railway Co. v. Hartshorne, 162 Ala. 491, 50 So. 139, as to the purchase of land by the city for the location of a depot within the municipality. The object and purpose of this provision is thus stated in Garland v. Board of Revenue of Montgomery County, 87 Ala. 223, 226, 6 So. 402,

" 'In adjudicating the constitutionality of a statute, it is the duty of the courts, in deference to the legislative department of the government, to so construe both the constitutional and the statutory provisions, if possible, that the statute may be upheld; but a constitutional provision, protective of the rights of persons and property, and remedial in its nature, is not to be construed so literally or strictly as to defeat the purposes for which it was intended; and a new provision, incorporated in a revised constitution, is to be construed in connection with the facts of public history, showing the causes in which it originated, and the mischief it was intended to remedy and prevent.'

" ' "In no project originated by individuals, whether associated or otherwise, with a view to gain, are the municipalities named permitted to participate in such manner as to incur pecuniary liability. They can neither become stockholders, nor furnish money or credit for the benefit of the parties interested therein." Operation should be given to the provision in the constitution co-extensive with the evils to be prevented. A loan of credit, or grant of money or thing of value in aid of an individual or corporation, in any mode, directly or indirectly, falls within its operation.'

"In Ala. State Bridge Corp'n v. Smith, 217 Ala. 311, 315, 116 So. 695, it was said: 'Section 94 relates to private corporations only;' In Griffin v. Jeffers, 221 Ala. 649, 130 So.

190, the right of a county to extend credit to a bridge corporation by way of lease for a long term was denied; and in Stone, County Treas., v. State ex rel. Mobile Broadcasting Corp'n, 223 Ala. 426, 136 So. 727, it was held the statute authorized the county's resources as to location and promoting industrial and manufacturing plants and other industries, not extended, by reason of section 94 of the Constitution, to the contract in question with Mobile Broadcasting Corporation for its station W O D X.

"The phase of the subject here pertinent had been adverted to in 13 R. C. L. 1191, § 222, as follows: ' * * * it has been held that a statute which provides that the fine imposed on the husband for abandoning his wife shall be paid to the wife or to the guardian or custodian of his minor child or children, is violative of a constitutional provision that 'no appropriation for private or individual purposes shall be made.' It has also been held that a statute which empowers the court, instead of imposing a fine, to require the defendant to pay a certain sum weekly to his wife, or custodian of his minor child or children, and to release the defendant from custody upon his entering into a recognizance to comply with the order, is invalid under a constitutional provision that 'no power of suspending laws shall be exercised except by the legislature.' Ex parte Smythe, 56 Tex. Cr. R. 375, 120 S. W. 200, 23 L. R. A. (N. S.) 854, 133 Am. St. Rep. 976; Notes 133 Am. St. Rep. 985; Ann. Cas. 1912B, 280; Commonwealth v. Graham, 157 Mass. 73, 31 N. E. 706, 16 L. R. A. 578, 34 Am. St. Rep. 255; State v. McPherson, 72 Wash. 371, 130 P. 481, Ann. Cas. 1914D, 587, and note.' However, 'such statutes are generally upheld.'

"The agreed statement of facts discloses that no fine has been paid or earned by the husband; that the county has received and will receive nothing for the hire of the convict to the State Board of Administration, and that there are no net earnings to which the county will be entitled; that compensation for the support of the wife and children, if it is to be made, must be at the rate provided by the statute from the general funds of that county, not otherwise appropriated. This would be an appropriation of the county's funds, 'or grant of public money' for private or individual purpose,—'in aid of, or to any individual' that was within the interdiction of section 94 of the Constitution under the judgment rendered by the circuit court.

"The petition should have been denied by the lower court on the pleading and agreed statement of facts, showing that there were no available funds and the county could not appropriate them under Section 94 to individual aid. That is to say, if, on the other hand, there were such earnings paid to the county for services of that convict (delivered

---

[1] 225 Ala. 206.

to the State Board of Administration under Gen. Acts 1927, pp. 52, 54), such moneys would have been available for the support (under section 4480, Code) of the wife and children, either or both as the case was; otherwise the general fund of the county was not available to that end—in aid of the individuals at interest.

"The county had the election to punish the convict at 'hard labor' pursuant to his conviction and judgment, or to deliver him for such purpose to the State Board of Administration. Having voluntarily elected and pursued the latter course of punishment of the convict, under the statute (Acts 1927, page 54), the county was entitled (under section 6 of said act) to have that Board account for that labor and pay over the 'net earnings' to the county for the beneficiaries under the statute.

"Thus we are brought to the instant facts, where the county had no such earnings from the labor of that convict. If so, it must audit and pay the same; if not, it cannot use the general funds of the county for the aid of individuals, though they be the prisoner's immediate dependent family.

"This construction and administration saves any portion of the statute from constitutional inhibitions (section 94, Const.), as where there are no 'earnings' of the convict, that have accrued (1) directly to the county by it putting the convict to hard labor (chapter 157, Code, § 4479 et seq., and other statutes as to hard labor of county convicts); or (2) where the convict was voluntarily delivered by the county to the State Board of Administration, and there from his punishment at hard labor no 'net earnings' accrued, —no payment can be exacted of the county's general fund.

"We may observe as to such 'earnings' or 'net earnings' of that convict, under section 4480 et seq., Code, that such special fund is impressed by the statute and the nature of the punishment imposed thereunder, and when collected by the county is impressed with or for the 'use of defendant's wife, or his child, or children, or both,' and shall be 'expended or disbursed for such use,' as directed by the statute. Such earnings do not become a part of the general fund of the county, nor of the special or fine and forfeiture fund of that county, as is generally provided for 'net earnings' of county convicts. Gen. Acts 1927, p. 54, § 6. Such earnings, when collected by the county, are within the influence of chapter 157 of the Code, 'Husband and Wife,' page 445, §§ 4479–4481; and when not so collected, may not be paid out of the general fund of said county (for the benefit of the convict's family) which is not available for such purpose, and to so do, would be offensive to section 94 of the Constitution.

"Under the agreed statement of facts, the county should not be compelled by mandamus to pay out its general fund contrary to the provisions of section 94 of the Constitution, to the end indicated by the instant ruling.

"The writ was improperly granted by the circuit court."

The foregoing being conclusive of the points of decision involved, it is ordered and adjudged that the judgment of the lower court from which this appeal was taken be reversed and a judgment here rendered for the appellant.

Reversed and rendered.